IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES STEVENS,<br><br>    Petitioner,<br><br>  v.<br><br>RON DAVIS, Warden, San Quentin State Prison<br><br>    Respondent.<br>_____ / | No. C 09-137 WHA<br><br><u>DEATH PENALTY CASE</u><br><br>**ORDER DENYING PETITIONER'S COUNSEL'S MOTION FOR AN EXPERT EVALUATION** |

**INTRODUCTION**

Petitioner's counsel, Robert Bryan and Mark Eibert, have filed a motion requesting appointment of Pablo Stewart, M.D., for purposes of evaluating petitioner to determine if petitioner is competent to dismiss certain claims from his petition for writ of habeas corpus. This motion is related to petitioner's co-pending motion to dismiss claims 13, 14, 17, 19, 20, 22, 26 and 27. For the reasons stated herein, counsel's motion for an expert evaluation is **DENIED**. Petitioner's motion to dismiss certain claims will be addressed by a companion order.

**STATEMENT**

Petitioner is a condemned inmate at San Quentin State Prison. On January 12, 2009, petitioner initiated the present habeas corpus action. Counsel for petitioner was appointed on February 9, 2012. Through his appointed counsel, petitioner filed his Amended Petition for Writ of Habeas Corpus on May 21, 2014, asserting 28 claims.

Although represented by counsel, petitioner has now filed four motions *in propria persona* and without the assistance of counsel. All of them sought to withdraw certain claims on the grounds that petitioner did not authorize them, the claims lack merit, and are unsupported by the facts. The most recent such motion was filed on October 20, 2014 (Dkt. No. 74).

The Court dealt with the *in propria persona* filings in a variety of ways, including the hiring of an independent attorney to meet with petitioner and his counsel to determine the nature of any potential conflict. Those methods failed to resolve the issue, so on December 3, 2014, the Court held an ex parte hearing at San Quentin State Prison with petitioner and his counsel to discuss the motions to withdraw certain claims from the petition and any other existing or potential conflict. The transcript of that proceeding was sealed (Dkt. No. 92).[1] As a courtesy, respondent's counsel attended the first and last parts of the proceedings (but not the under seal part) and stood by in case their input was needed.

The Court spent significant time in the hearing addressing whether petitioner was competent and whether he understood the ramifications of his request to withdraw certain claims from the petition. Counsel both agreed that petitioner was competent (Tr. 50, 55–56) and petitioner testified that he had no history of mental illness and was not being treated for any at the time of the hearing (Tr. 7–9). He also indicated that he understood the value of the claims his counsel wished to pursue and that he would not have the opportunity to assert them later (Tr. 55–58). Nonetheless, petitioner expressed a desire to withdraw the claims because he did not believe there was a genuine factual basis for them and he did not wish to compromise his credibility on the remaining claims (Tr. 56–58, 66–69).

During the proceeding, Attorney Robert Bryan requested the opportunity to brief the issue of whether petitioner had the authority to withdraw certain claims from the habeas

---

[1] Because a great deal of privileged information was discussed during the hearing, the transcript was sealed. This provides respondent with no meaningful opportunity to object to the motion or otherwise respond. The Court has carefully reviewed the entire transcript and concludes that the portions relevant to the determination of this motion are not privileged because they do not reveal any confidential attorney-client matters or discussions. Therefore, key passages will be cited to; however, the remainder of the transcript will remain sealed to protect attorney-client confidentiality.

2

1  petition. That request was granted and respondent was given an opportunity to brief the issue as
2  well (Dkt. No. 83). The Court appointed special counsel, Attorney Lori Rifkin, to brief the
3  issue on petitioner's behalf (Dkt. No. 87). Each party filed a brief on the issue (Dkt. Nos. 95,
4  96, and 102).

5  Attorney Bryan indicated through informal means his intent to file a reply and to
6  challenge petitioner's competency to dismiss the challenged claims from the habeas petition.
7  The Court instructed Attorney Bryan to file a formal motion to request a reply and reminded all
8  parties that there was full agreement at the December 3 hearing that petitioner was and is
9  competent to waive claims (Dkt. No. 101).

10  Attorney Bryan subsequently requested the opportunity to file a reply to Attorney
11  Rifkin's brief (Dkt. No. 104), which was denied (Dkt. No. 105). He then filed, on behalf of
12  both of petitioner's counsel, a motion to appoint a psychiatric expert to determine if petitioner
13  lacked competency to dismiss claims from the petition (Dkt. No. 106). There was no proof of
14  service attached to the motion, but it is presumed that since it was filed electronically, petitioner
15  was not served with the motion.

## ANALYSIS

17  Petitioner's counsel's motion is predicated on the assertion that the Court used an
18  incomplete and, therefore, incorrect standard in evaluating petitioner's competency at the
19  December 3 hearing (Br. 2). The motion presents an unusual situation. Petitioner does not seek
20  to abandon his entire petition, which he would be well within his rights to do. He asks, instead,
21  that he be allowed to dismiss a limited number of claims framed by counsel, all relating to
22  abuse he allegedly suffered as a child and any related mental health claims. Simply put,
23  petitioner does not believe that the events underlying the claims ever happened and does not
24  believe the assertions in the supporting declarations (Pet., App. II, Exs. 18-21). Because he
25  does not believe that these events took place, petitioner was diagnosed previously with
26  Dissociative Amnesia by Dr. Stewart, the forensic psychiatrist whom petitioner's counsel now
27  seek to have conduct a new psychiatric examination focused on petitioner's current competency
28  as it relates to his request to withdraw certain claims (Am. Pet., Ex. 69). Essentially,

3

petitioner's counsel seek to have him declared *partially* incompetent, that is, incompetent only as to those claims predicated on events and statements that petitioner does not believe occurred.

### 1. FRCP 35 SETS THE RELEVANT LEGAL STANDARD.

Any party seeking to compel the psychiatric evaluation of another must demonstrate that (1) the adverse party's mental condition is in controversy and (2) there is good cause for the examination pursuant to FRCP 35. *See Schlagenhauf v. Holder*, 379 U.S. 104, 118 (1964); *see also* FRCP 35(a). "Mental and physical examinations are only to be ordered upon a discriminating application by the district judge of the limitations prescribed by the Rule." *Schlagenhauf*, 379 U.S. at 121.

### 2. COUNSEL HAVE FAILED TO ESTABLISH GOOD CAUSE.

Petitioner has never sought to place his mental health in controversy in the litigation of his petition. He seeks the opposite. Counsel, however, believe petitioner may be incompetent (in part) because he does not believe the alleged facts underlying the abuse claims, claims that they as counsel framed without petitioner's involvement. As discussed more thoroughly below, this assertion by counsel seems disingenuous in light of their clear-cut statement during the December 3 hearing that petitioner was and is competent. More importantly, counsel's argument focuses on petitioner's *decision* to withdraw claims, which counsel opposes, and not on whether "a mental disease, disorder or defect substantially affects [his] *capacity* to appreciate his options and make a rational choice." *Dennis v. Budge*, 378 F.3d 880, 890 (9th Cir. 2004) (emphasis in original); *see also Godinez v. Moran*, 509 U.S. 389, 396 (1993).

Petitioner has never been adjudicated incompetent in any capacity. While there were certainly indications of a troubled past, the defense psychiatrist who examined him prior to trial diagnosed him with a personality disorder and stated that petitioner did not suffer from any "classic mental illness" (RT 6554).

At the December 3 hearing, the Court gave petitioner's counsel ample opportunity to raise concerns about petitioner's mental health and his competency. When asked directly by the Court whether he believed his client was incompetent to waive the claims at issue, Attorney Bryan stated, "No, absolutely not. I do not feel he's incompetent at this time, and I've never

4

felt that" (Tr. 50). To be absolutely clear, the Court again raised the issue with counsel by stating, "And then in terms of competence, I think you're both saying that [petitioner] is competent to make a decision" (Tr. 55–56). Attorney Bryan responded, "I do not like saying that, but yes, he is competent in my opinion" (*id*. at 56). Attorney Eibert's response was a simple, "Yeah" (*ibid*). Counsel vouched for petitioner's competency, particularly as it pertains to his ability to understand and appreciate the proceedings and assist his attorneys in them, and rested their argument on who had the authority to control the petition's contents — petitioner versus counsel.

Now, however, counsel are relying on a declaration from Dr. Stewart that was submitted in conjunction with the Amended Petition for Writ of Habeas Corpus to show that petitioner's "mental disabilities are well established" (Br. 6). In that declaration, Dr. Stewart diagnosed petitioner with a form of a "neurodevelopmental disorder associated with prenatal alcohol exposure," Posttraumatic Stress Disorder, and Dissociative Amnesia (Am. Pet., Ex. 69 at 5). He based these diagnoses on in-person interviews with petitioner and a review of the trial record and other relevant documents (*ibid.*).

At no point during the questioning at the December 3 hearing did counsel make any reference to a well-established history of mental disabilities. Moreover, the "well-established history" contention is based on a declaration that was not submitted to the state courts during collateral review and, therefore, not subjected to any evidentiary testing or analysis. *See Cullen v. Pinholster*, — U.S. —, 131 S. Ct. 1388, 1401 (2011).

Petitioner's ability to understand the impact of dismissing the claims is a completely separate matter from whether he believes the factual underpinning for those claims. A failure in the former could constitute good cause for ordering a psychiatric evaluation. A disbelief in the latter is a difference of opinion, regardless of the root cause of it. Put simply, a petitioner can have a mental illness and can disbelieve completely the factual basis for a number of claims, but that, in and of itself, does not give rise to a need for a psychiatric evaluation to determine competency. Mental illness bears on competency, but does not render a petitioner incompetent as a matter of course. *See Dennis*, 378 F.3d at 890 ("Evidence showing that a prisoner's

5

1  decision is the product of a mental disease does not show that he lacks the capacity to make a
2  rational choice. It is the latter – not the former – that matters.").

3  It was established at the December 3 hearing that petitioner had been advised as to the evidence supporting the claims (Tr. 55), that petitioner clearly understood that the claims he has sought to waive were a mix of guilt- and penalty-phase claims (Tr. 68), and that petitioner understood the consequences of waiving such claims (Tr. 36–37, 56–57.) The Court explained to petitioner, "[W]herever the federal course of action runs out and there's a final judgment, that is it. And if you lose, the day comes when they take you into the execution room. . . . So that's a serious thing, at and that point you might be saying to yourself, . . . 'I wish I had raised those issues that Mr. Bryan wanted me to raise because I might have won one of those'" (Tr. 57). Petitioner said that he "understood" that (*ibid*).

Regardless of whether petitioner accepts the allegations of severe sexual, emotional and physical abuse as true, he very clearly understands that there is evidence to support these claims that his counsel say is reliable. He understands that counsel believe that some, if not all, of the claims petitioner seeks to dismiss have a chance of success, perhaps even a higher chance than some of the remaining claims on which petitioner wishes to focus. He also appreciates that if he dismisses these claims and loses on the remaining claims that he will, barring any discretionary intercession from the Court of Appeals or Supreme Court, be executed. It is entirely reasonable for petitioner to refuse to assert claims he believes will undermine his overall case. He will testify against these disputed claims and does not want to cast doubt on the rest of his case by pursuing claims he believes lack a true evidentiary basis. For these reasons, counsel have failed to demonstrate good cause for an evaluation.

### 3. *REES V. PEYTON* IS NOT THE APPROPRIATE LEGAL STANDARD.

Petitioner's counsel argue that petitioner should be subjected to a psychiatric evaluation because when his competency was addressed at the December 3 hearing, the Court failed to adhere to the standard set out in *Rees v. Peyton*, 384 U.S. 312, 314 (1966). Counsel's reliance on *Rees* is misplaced.

The petitioner in *Rees* sought to withdraw his request for certiorari and forego any

further legal proceedings challenging his conviction and capital sentence. *Id*. at 313. The attorney there advised the Supreme Court that he could not "consciously accede to these instructions without a psychiatric evaluation of Rees because evidence cast doubt on Rees' mental competency." *Ibid*. The Supreme Court remanded the case to the district court to determine:

> whether [the petitioner] has capacity to appreciate his position and make a rational choice with respect to continuing or abandoning litigation or on the other hand whether he is suffering from a mental disease, disorder, or defect which may substantially affect his capacity in the premises.

*Id.* at 314.

*Rees* applies where a petitioner seeks to forego all legal proceedings and essentially "volunteer" for execution. *Miller ex rel. Jones v. Stewart*, 231 F. 3d 1248, 1250 (9th Cir. 2000). Petitioner here, however, intends to continue challenging his conviction in a vigorous manner and could rationally fear that pressing the unwanted claims may prejudice the many other claims. Counsel cite no legal authority that the higher standard of competency in *Rees* would apply to a situation where the petitioner is still actively pursuing litigation.

Moreover, as a general matter, counsel have failed to provide and the Court has not found any authority for the proposition that a petitioner can be partially incompetent. There appears to be no dispute that petitioner understands the proceedings and is able to participate fully in them, aside from his disagreement with counsel about the factual basis for several claims. Nor is there a dispute that petitioner wishes to continue litigating the petition. As counsel's argument is based on the Court's alleged failure to use the proper standard at the December 3 hearing and they have failed to show that their proffered standard applies, their argument necessarily fails.

//
//
//
//
//

7

**CONCLUSION**

Petitioner's counsel's motion for psychiatric evaluation fails to show that petitioner's mental health is in controversy or that there is good cause for ordering one. Additionally, counsel's reliance on *Rees v. Peyton* is misplaced. Accordingly, the motion is **DENIED.**

The Clerk shall also serve a copy of this order directly on petitioner.

**IT IS SO ORDERED.**

Dated: March 12, 2015.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE