IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES STEVENS,<br><br>    Petitioner,<br><br>  v.<br><br>RON DAVIS, Warden, San Quentin State Prison<br><br>    Respondent.<br>_____/ | No. C 09-137 WHA<br><br>DEATH PENALTY CASE<br><br>**ORDER GRANTING PETITIONER'S MOTION TO WITHDRAW CERTAIN CLAIMS FROM THE PETITION** |

**INTRODUCTION**

Petitioner has filed his fourth motion to withdraw claims 13, 14, 17, 19, 20, 22, 26 and 27 from his petition. Petitioner cites counsel's failure to get approval from him for the contested claims and a lack of factual basis for them. For the reasons stated herein, petitioner's motion to withdraw certain claims from the petition is **GRANTED**.

**STATEMENT**

Petitioner is a condemned inmate at San Quentin State Prison. On January 12, 2009, petitioner initiated the present habeas corpus action. Counsel for petitioner, Robert Bryan and Mark Eibert, were appointed on February 9, 2012. Through his appointed counsel, petitioner filed his Amended Petition for Writ of Habeas Corpus on May 21, 2014, asserting 28 claims.

Although represented by counsel, petitioner has now filed four motions *in propria persona* and without the assistance of counsel. All of them sought to withdraw certain claims

on the grounds that petitioner did not authorize them, they lack merit, and they are unsupported by the facts. The most recent such motion was filed on October 20, 2014 (Dkt. No. 74).

The Court dealt with the *in propria persona* filings in a variety of ways, including the hiring of an independent attorney to meet with petitioner and his counsel to determine the nature of any potential conflict. Those methods failed to resolve the issue, so on December 3, 2014, the Court held an ex parte hearing at San Quentin State Prison with petitioner and his counsel to discuss the motions to withdraw certain claims from the petition and any other existing or potential conflict. The transcript of that proceeding was sealed (Dkt. No. 92). As a courtesy, respondent's counsel attended the first and last parts of the proceeding (but not the under seal part) and stood by in case their input was needed.

During the proceeding, Attorney Robert Bryan requested the opportunity to brief the issue of whether petitioner had the authority to withdraw certain claims from the habeas petition. That request was granted and respondent was given an opportunity to brief the issue as well (Dkt. No. 83). The Court appointed special counsel, Attorney Lori Rifkin, to brief the issue on petitioner's behalf (Dkt. No. 87). Each party filed a brief on the issue (Dkt. Nos. 95, 96, and 102).

**ANALYSIS**

The challenged claims focus on sexual abuse that petitioner allegedly suffered as a child and the resulting impact on his mental state. Petitioner denies any such abuse took place. Petitioner's counsel assert that petitioner has dissociative amnesia and does not recall the events. The crux of counsel's argument against allowing petitioner to withdraw claims from his petition is that counsel is responsible for determining how to litigate the case and selection of claims fall within that scope of authority. They also argue that their professional duty requires that they present all known constitutional claims, even over the objection of petitioner.

Petitioner argues that he has the authority to make fundamental decisions about his case, including determining which claims merit pursuit, and that he should be free to delete claims he believes lack truth in order to preserve his credibility on other claims with more chances of success.

1  Respondent supports petitioner's position that he has the authority to withdraw certain
2  claims from his petition.  Respondent argues that counsel's actions are constrained by the fact
3  that they serve as agents for petitioner and are, therefore, subject to his direction.

4  Section 2254 sets out the governing standards for when relief should be granted on "[a]n
5  application for a writ of habeas corpus on behalf of a person in custody."  28 U.S.C. 2254(b)(1).
6  While the statute indicates the possibility that a petition may be filed *on behalf of* a prisoner,
7  other statutory requirements and interpreting case law make clear that either the claims must be
8  authorized by a petitioner or the person filing on behalf of a petitioner must seek "next friend"
9  status if they intend to act in a manner not directly authorized by the petitioner.

10  Counsel are petitioner's agents.  *See Maples v. Thomas*, __ U.S. __, 132 S. Ct. 912, 922
11  (2012).  In *Maples*, the Supreme Court noted that "the principal bears the risk of negligent
12  conduct on the part of his agent."  *Ibid*. (citing to *Coleman v. Thompson*, 501 U.S. 722, 754
13  (1991)).  *Coleman* relied on the Restatement of Agency to set forth the nature of the relationship
14  between counsel and a petitioner, and the risk that a petitioner bears for counsel's actions.  As
15  respondent now notes, the Restatement (Third) of Agency 101 (2006), defines agency as "[t]he
16  fiduciary relationship that arises when one person (a 'principal') manifests assent to another
17  person (an 'agent') that the agent shall act on the principal's behalf and *subject to the*
18  *principal's* control, and the agent manifests assent or otherwise consents so to act" (emphasis
19  added).

20  That counsel are mere agents for a habeas petitioner is underscored by the requirement
21  in Section 2242 that the petition be "signed and verified by the person for whose relief it is
22  intended or by someone acting in his behalf."  "[A] habeas petitioner's attorney can sign and
23  verify the petition for petitioner.  In the absence of evidence to the contrary, there is a
24  presumption that the petitioner has been fully informed of, *and has consented to*, claims raised
25  in the petition."  *Lucky v. Calderon*, 86 F.3d 923, 925 (9th Cir. 1996) (emphasis added, citation
26  omitted).  In *Lucky*, petitioner's attorney verified the petition on the prisoner's behalf because
27  he had refused to see her when she visited, refused to answer her letters, and refused to return
28  any signed documents.  The district court dismissed the petition as unauthorized and denied

3

petitioner's motion for reconsideration, despite the fact that it was filed with an affidavit eventually supplied by the petitioner stating that his attorney was "authorized to file and pursue this litigation or any other challenging my death judgment." *Lucky,* 86 F.3d at 925.  Our court of appeals reversed because it found that with the affidavit, the petitioner had met his burden of showing that the petition was authorized.  *Id*. at 925–26.

Petitioner here could not be clearer about his insistence on dismissing claims 13, 14, 17, 19, 20, 22, 26 and 27 and his basis for doing so.  He does not believe that there is any true factual basis for these claims and he believes that pursuit of these claims could compromise his credibility before the Court.  While it is conceivably true, as counsel suggest, that petitioner has repressed memories of alleged abuse suffered as a child, petitioner's concern about the impact of pursuing potentially non-meritorious claims remains reasonable and rational.  Petitioner was extensively questioned about his mental health at the December 3 hearing and his ability to comprehend the consequences of withdrawing the challenged claims (Tr. 8–9, 56–58).  Counsel were in agreement that petitioner is competent to make this decision (Tr. 50, 55–56).  Since there are no legitimate competency concerns, his counsel serve as his agents and their role is to assist him in the pursuit of claims that he, as the proponent of the litigation, wishes to pursue.

It is well-settled that a petitioner, so long as he is not incompetent, retains the right to withdraw his habeas petition in its entirety, or to dismiss any appeal of a denial of relief or petition for certiorari.  *See Rees v. Peyton*, 384 U.S. 312, 314 (1966).  If he can do the greater, he surely can do the lesser included.  It strains reason to believe that petitioner must dismiss all to avoid dismissing certain claims on which his counsel persist.

Moreover, in this matter, petitioner's failure to sign the verification is significant. Attorney Bryan signed the verification using much the same language used in *Lucky*, that the "matters are more within [counsel's] knowledge than [petitioner's]" (Am. Pet. 307).  He also relied on the fact petitioner lived in another county, saying that getting him to sign the verification would have resulted in delay (*ibid*).

Ordinarily, counsel's signature on the verification would not have become an issue, except for the fact that petitioner has repeatedly noted in his *in propria persona* filings that he

4

did *not* sign the verification and that he does *not* approve the pursuit of the contested claims. Following *Lucky*, claims 13, 14, 17, 19, 20, 22, 26 and 27 cannot be allowed to remain a part of the petition. They are not authorized and, therefore, must be dismissed.

The Court is, however, satisfied from petitioner's *in propria persona* filings and the December 3 hearing that petitioner has authorized all of the other claims. There is no basis to dismiss the rest of the petition as unauthorized. *See Lucky*, 86 F.3d at 925-26.

## CONCLUSION

Petitioner's *in propria persona* motions serve as sufficient evidence that counsel are not authorized to pursue claims 13, 14, 17, 19, 20, 22, 26 and 27. Since petitioner did not sign the verification, these claims are not authorized and are not properly before the Court. These claims must be dismissed. Petitioner's assent to the other claims serves as sufficient evidence that they are authorized and a signed verification by petitioner is not necessary.

Even if petitioner had signed the verification, counsel serve as his agents and, as such, must assent to act in accordance with petitioner's rational and reasonable wishes regarding the litigation, subject only to their professional obligations. Petitioner, therefore, has the right to request that his counsel dismiss claims that he believes are non-meritorious and counsel are required to act accordingly. No professional standard requires counsel to press issues the client refuses to litigate and desires not to be litigated for normal and reasonable reasons.

For these reasons, claims 13, 14, 17, 19, 20, 22, 26 and 27 are dismissed from the petition.

The Clerk shall also serve a copy of this order directly on petitioner.

**IT IS SO ORDERED.**

Dated: March 12, 2015.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE