IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES STEVENS,<br><br>　　　　Petitioner,<br><br>　v.<br><br>RON DAVIS, Warden, San Quentin State Prison,<br><br>　　　　Respondent. | No. C 09-00137 WHA<br><br>DEATH PENALTY CASE<br><br>**ORDER GRANTING RESPONDENT'S MOTION TO FIND CLAIMS 5 AND 23 PROCEDURALLY DEFAULTED IN WHOLE OR IN PART AND DENYING AS TO CLAIM 6** |

**INTRODUCTION**

Respondent filed a motion to dismiss claims 5, 6, 20, and 23 from the petition based on procedural default. Prior to the submission of petitioner's opposition, petitioner's motion to withdraw certain claims was granted and claim 20, among others, was withdrawn from the petition. Petitioner opposed the motion to dismiss the remaining claims. For the reasons stated herein, four of the subclaims in claim 5 are procedurally defaulted, claim 23 is procedurally defaulted in its entirety, and claim 6 is not procedurally defaulted.

**STATEMENT**

Petitioner is a condemned inmate at San Quentin State Prison. On January 12, 2009, petitioner initiated the present habeas corpus action. Counsel for petitioner, Robert Bryan and Mark Eibert, were appointed on February 9, 2012. Through his appointed counsel, petitioner filed his Amended Petition for Writ of Habeas Corpus on May 21, 2014, asserting 28 claims.

After a round of briefing and careful review and consideration, the Court granted petitioner's motion to withdraw eight of those claims from his petition (Dkt. No. 109).

Twenty claims remain. Of those, respondent seeks to dismiss four of the subclaims in claim 5, as well as claim 6 and claim 23 on the ground that these subclaims and claims are procedurally defaulted (*see generally* Mot. to Dismiss, Dkt. No. 107). Counsel for petitioner filed an opposition (Dkt. No. 111) and respondent filed a reply (Dkt. No. 112). The motion is now ripe for determination.

## ANALYSIS

Under the doctrine of procedural default, federal courts will not review questions of federal law decided by a state court if the decision also rests on a state law ground that is independent of the federal question and adequate to support the judgment. *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991), *overruled on other grounds by Martinez v. Ryan*, __ U.S. __, 132 S. Ct. 1309 (2012). The doctrine of procedural default is a specific application of the general doctrine as to adequate and independent state grounds. *Fields v. Calderon*, 125 F.3d 757, 762 (9th Cir. 1997). It bars a federal court from granting relief on a claim when a state court declined to address the claim because the petitioner failed to meet a state procedural requirement.

In the habeas context, the procedural default rule furthers the interests of comity and federalism. *Coleman*, 501 U.S. at 730. It helps ensure that the state criminal trial remains the "main event" rather than a "tryout on the road" for a later federal habeas proceeding. *Wainwright v. Sykes*, 433 U.S. 72, 90 (1977).

The procedural default analysis proceeds in two steps. First, the federal court must consider whether the procedural rule the state court invoked to bar the claim is both "independent" and "adequate" to preclude federal review. "For a state procedural rule to be 'independent,' the state law basis for the decision must not be interwoven with federal law." *LaCrosse v. Kernan*, 244 F.3d 702, 704 (9th Cir. 2001) (citing *Michigan v. Long*, 463 U.S. 1032, 1040-41 (1983)). A state law ground is interwoven with federal law in those cases where application of the state procedural rule requires the state court to resolve a question of federal

2

law. *Park v. California*, 202 F.3d 1146, 1152 (9th Cir. 2000) (citing *Ake v. Oklahoma*, 470 U.S. 68, 75 (1985)). If the state court does not make clear that it is resting its decision on an independent and adequate state ground, then the state denial is presumed to have been based at least in part upon federal grounds. *Calderon v. U.S. Dist. Ct. for the E. Dist. of Cal.* (*Bean*), 96 F.3d 1126, 1129 (9th Cir. 1996).

For a state procedural rule to be "adequate," it must be clear, well-established and consistently applied. *Bean*, 96 F.3d at 1129. The issue of whether a state procedural rule is adequate to foreclose federal review is itself a federal question. *Douglas v. Alabama*, 380 U.S. 415, 422 (1965). The adequacy of a state procedural rule must be assessed as of the time when the petitioner committed the default. *Fields*, 125 F.3d at 760.

The burden of proving the adequacy of a state procedural rule lies with the state. *Bennett v. Mueller*, 322 F.3d 573, 585-86 (9th Cir. 2003). However, once the state has adequately pled the existence of an independent and adequate procedural ground as a defense, the burden to place that defense at issue shifts to petitioner, who "may satisfy this burden by asserting specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the rule." *Id.* at 586. "'The scope of the state's burden of proof thereafter will be measured by the specific claims of inadequacy put forth by the petitioner.'" *Id.* at 584–85 (citation omitted).

Second, if the procedural rule invoked by the state court is both adequate and independent, then the next step of the evaluation requires the federal court to consider whether the petitioner has established either "cause" for the default and "actual prejudice" as a result of the alleged violation of federal law, or that failure to consider the claim will result in a fundamental miscarriage of justice. *See Coleman*, 501 U.S. at 750. The "cause" standard requires petitioner to show that some factor external to the defense impeded trial counsel's efforts to raise the claim in state court. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Such objective impediments include a showing that the factual or legal basis for a claim was not available to counsel, or that "some interference by officials" made compliance with a procedural rule impracticable. *Ibid.* Additionally, ineffective assistance of counsel may serve

3

as "cause" for the procedural default. *Ibid*. "Not just any deficiency in counsel's performance will do, however; the assistance must have been so ineffective as to violate the Federal Constitution." *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).

"Federal courts retain the authority to issue the writ of habeas corpus in a further, narrow class of cases despite a petitioner's failure to show cause for a procedural default. These are extraordinary instances when a constitutional violation probably has caused the conviction of one innocent of the crime." *McCleskey v. Zant*, 499 U.S. 467, 494 (1991). This class of cases implicates a fundamental miscarriage of justice.

1. **CLAIM 5.**

    A. **Procedural Default**

Respondent argues that claim 5 is defaulted in part because the California Supreme Court found four of the subclaims barred either by waiver or by failure to seek an admonition under the contemporaneous objection rule (Mot. to Dismiss at 1–5). Petitioner admits to the waiver, stating, "Even though there appears to have been a waiver by Petitioner's trial counsel, the Court is asked in its discretion not to grant the dismissal request" because it goes to a pattern and practice of prosecutorial misconduct that tainted petitioner's trial (Opp. at 3).

A court may not reach the merits of a procedurally defaulted claim "in which the petitioner failed to follow applicable state procedural rules in raising the claim[]," unless the petitioner can show cause and prejudice for the default. *Sawyer v. Whitley*, 505 U.S. 333, 338 (1992) (citations omitted). The rule is not jurisdictional, but neither is it largely discretionary as petitioner argues. Petitioner's citations to Second Circuit decisions are not persuasive. Those decisions note the prudential nature of the procedural default rule, but also note, and petitioner fails to address, the fact that the ability of a district court to hear a claim defaulted based on an independent and adequate state procedural bar requires the petitioner to show cause and prejudice for the default (or that imposing a default would result in a fundamental miscarriage of justice). *Spence v. Superintendent, Great Meadow Correctional Facility*, 219 F.3d 162, 170 (2d. Cir. 2000). Accordingly, the Court will analyze whether the asserted state procedural bars have been shown to be adequate and independent according to each party's

1  burden under *Bennett*, and, if the bars are deemed such, then will look to cause and prejudice
2  and/or fundamental miscarriage of justice to see if an exception applies to the imposition of the
3  procedural bars.

4  California has long required a defendant to make a timely and specific objection at trial
5  in order to preserve a claim for appellate review. *See, e.g., People v. Green*, 27 Cal. 3d 1, 27
6  (1980). Our court of appeals has honored defaults for failure to comply with the
7  contemporaneous objection rule. *See Vansickel v. White*, 166 F.3d 953, 957–58 (9th Cir. 1999).
8  Accordingly, respondent has "adequately pled the existence of an independent and adequate
9  procedural ground," the contemporaneous objection rule, as a defense to four of petitioner's
10 subclaims in claim 5. *Bennett*, 322 F.3d at 586.

### *(i)* *Victim Impact Evidence.*

12 Respondent challenges petitioner's subclaim regarding victim Leslie Noyer's mother
13 picking up a photograph of her daughter and kissing it after she left the witness stand as barred
14 because counsel failed to contemporaneously object on the specific ground of prosecutorial
15 misconduct (Mot. to Dismiss at 2). Petitioner's attorney had moved for a mistrial based on the
16 incident, but he specifically stated that he was not alleging any prosecutorial misconduct and
17 was, instead, concerned about the effect of the incident on the jurors. That motion was denied.
18 *Stevens*, 41 Cal. 4th at 206–07. Defense counsel stated at the time, "I would assume [the
19 prosecutor] didn't know it was going to happen . . . I don't think that's an issue . . . I'm not
20 alleging any kind of misconduct." *Ibid.*

21 Petitioner admits that his trial attorney failed to object on the ground of prosecutorial
22 misconduct and states, "That ineffectiveness of counsel should be excused for procedural default
23 purposes" (sic) (Opp. at 3). Petitioner has failed to put into controversy the adequacy of the state
24 bar asserted by respondent and has, in fact, agreed that the bar was imposed properly. Our court
25 of appeals has upheld procedural defaults based on the contemporaneous objection rule in
26 California as early as 1981, which is sufficient assurance that the rule was adequate and
27 independent at the time of petitioner's trial in 1993. *See Garrison v. McCarthy*, 653 F.2d 374,

5

377 (9th Cir. 1981).  Accordingly, this subclaim is procedurally defaulted unless petitioner can show cause and prejudice or a fundamental miscarriage of justice to overcome the default.

### *(ii)* *"Internal Fortitude" Comment*.

The next subclaim for which respondent asserts a procedural default defense is the argument that the prosecutor's statement, "The difficulty is whether all 12 of you have the internal fortitude to impose the death penalty on that man over there," constituted prosecutorial misconduct (Mot. Dismiss at 3).  The California Supreme Court denied this claim as "forfeited because [petitioner] did not object on this ground at trial." *Stevens*, 41 Cal. 4th at 208. Petitioner argues that trial counsel did object in a way that covered the comment and that the state court decision was incorrect (Opp. at 3) and that counsel brought a motion for mistrial based on the "internal fortitude" comment and other statements (Amd. Pet. at 95).

The record shows that counsel did not object to the prosecutor's "internal fortitude" comment.  The prosecutor argued:

> The difficulty in this case is not whether the death penalty is justified and warranted here.  *The difficulty is whether all 12 of you have the internal fortitude to impose the death penalty on that man over there.*  It's not easy.  And as Mr. Berger in his opening statement alluded to, all it takes is one, one of you to block a death verdict in this jury.  And that's what he wants, just one of you because we have to have a unanimous verdict for a death verdict. All 12 of you have to agree on that.  And if you don't and you hang, we do it again with another jury (RT 6879–80) (emphasis added).

The defense attorney let the prosecutor go on for some time after the "internal fortitude" comment and only raised an objection once the issue of individual verdicts arose.  The judge directed the jury to disregard the last statement only and petitioner's attorney did not raise a subsequent objection (*id*. at 6780).

The next objection at trial made by petitioner's attorney also concerned the individual verdict issue.  The prosecutor argued, "And in that process, the wisdom of our process is such that if [twelve] people deliberate with each other and consider all the evidence and the law,

6

generally can reach a unanimous verdict that reflects your individual verdicts — " (RT 6881). Petitioner's attorney interjected and said:

> Your Honor, once again, I would object. It's improper. Counsel knows that the issue is an individual verdict. He keeps repeating it one way or another. I don't want to make a speech. I never like to interrupt another person's argument. It's highly improper. I want the court to admonish the prosecutor not to get into that type of argument (*ibid*).

When the defense attorney filed the motion for new trial based on the prosecutor's improper argument, he made no mention of the "internal fortitude" comment (*id.* at 7080–81). The motion focused specifically on further references the prosecutor made to the potential of a hung jury and the need for a unanimous verdict (RT 7080–81).

Based on trial counsel's failure to specifically object to the prosecutor's "internal fortitude" comment, the California Supreme Court properly held that it was waived on appeal. Accordingly, this subclaim is procedurally defaulted unless petitioner can show cause and prejudice or a fundamental miscarriage of justice to overcome the default.

### *(iii)   Failure to Seek an Admonition for Kormos And Noyer Statements.*

There are two additional comments in the prosecutor's closing argument that gave rise to two subclaims: (1) the prosecutor's statement, "You know, I wonder if Dr. Kormos had the misfortune of losing a loved one who violated the law–" and (2) the prosecutor's description of his imaginary conversation with deceased victim Leslie Noyer, wherein he stated, "Leslie said to me, 'You know, his attorney–'" (Mot. to Dismiss at 3–4). Respondent asserts that these two subclaims are also barred by the contemporaneous objection rule because, while defense counsel did object at the time and the line of commentary ceased immediately, he failed to request an admonition (*ibid.*).

For his part, petitioner states that applying the bar to the comment concerning Dr. Kormos is illogical because the court denied it both on procedural grounds and on the merits. Petitioner states, "So the court was saying that defense objection should have been broader, but nonetheless it would not have made any difference. That contradiction seems illogical, to state there was a waiver but recognize it would make no difference" (Opp. at 4). As to the comment

7

about Leslie Noyer, petitioner argues that "counsel did object, but clearly minimized his comments since it was in front of the jury" (*ibid*.).  Petitioner then goes on to reargue the discretionary nature of the procedural default rule and the magnitude of the cumulative misconduct by the prosecutor (*id*. at 4–8).  None of these arguments or assertions places the adequacy of the state bar as it pertains to a failure to seek an admonition into controversy.  Accordingly, petitioner has not met his burden under *Bennett* and these subclaims are procedurally defaulted unless petitioner can show cause and prejudice or a fundamental miscarriage of justice.

### *(iv)  Collective Impact.*

Petitioner argues that the Court should exercise its discretion to overlook the procedural defaults and proceed to the merits of these subclaims because they are part of a pattern and practice that rendered petitioner's trial fundamentally unfair (Opp. at 4).  This argument, on its own, is insufficient to challenge the adequacy and independence of the procedural bars or to demonstrate cause and prejudice or a fundamental miscarriage of justice.  There is no pattern and practice exception to the procedural default rule.  However, petitioner has raised a cumulative error claim that includes allegations of a pattern and practice of prosecutorial misconduct (*see* claim 21), which will be reviewed when briefing on the claim is complete.

### B.  Cause and Prejudice Analysis.

Petitioner's cause and prejudice argument for all subclaims and his fundamental miscarriage of justice claim is that "it would be a miscarriage of justice not to address the merits of constitutional claims in a capital case based in large part on ineffective assistance of counsel where the reason for the alleged procedural default was itself the result of ineffective assistance of counsel" (Opp. at 2).  Petitioner reiterates this argument for the subclaims in claim 5 by saying, "Procedural default should not bar habeas corpus review because here there is cause for the default–ineffective assistance amounting to a Sixth Amendment violation for failing to adequately respond to the prosecutorial misconduct–and actual prejudice as a result of the Sixth Amendment violations" (Opp. at 4).  This is the entirety of petitioner's argument.

8

The cause standard requires the petitioner to show that "'some objective factor external to the defense impeded counsel's efforts' to construct or raise the claim." *McCleskey*, 499 U.S. at 493 (citing *Murray*, 477 U.S. at 488). Objective factors that constitute cause include interference by officials that made compliance with the state's procedural rule impracticable and a showing that the factual or legal basis for a claim was not reasonably available to counsel. *See id*. at 493–94.

Inadequate assistance of counsel may establish cause, but attorney error short of constitutionally ineffective assistance of counsel does not constitute cause and will not excuse a procedural default. *See McCleskey*, 499 U.S. at 494. To demonstrate cause sufficient to excuse the procedural default, petitioner must show that (1) the defense attorney made errors so serious that he was not functioning as the counsel guaranteed by the Sixth Amendment, and (2) the deficient performance prejudiced the defense. *Loveland v. Hatcher*, 231 F.3d 640, 644 (9th Cir. 2000) (quoting *Strickland v. Washington*, 466 U.S. 668 (1984)). Petitioner has failed to meet his burden.

Aside from the two assertions of ineffective assistance of counsel noted above, petitioner has not made any specific argument to further his claim that counsel's decision not to object or to seek an admonition with respect to the four subclaims constituted deficient performance. Presumably his discussion of the merits, (Opp. at 5–8), is intended to show prejudice; however, he falls short of explicitly making this argument or meeting the standard.

### *(i)   Victim Impact Evidence.*

Petitioner cannot show cause for this subclaim because it is evident from the record that his trial attorney's decision not to object based on prosecutorial misconduct was a trial strategy or a decision based on his professional judgment. After the defense moved for a mistrial, petitioner's attorney and the prosecutor entered into a lengthy discussion about the witness's taking the photograph and kissing it (RT 6499–6505). Petitioner's attorney, in setting out the problem for the court, said, "Now, understand, I'm put into the position, obviously — I cannot obviously in this position yell, 'Objection'; okay? Anything I say at that particular point, anything I say to the jury is negative, you know, would provoke a negative response"

9

1 (RT 6500–01). This statement evinces a clear trial strategy not to object during an emotionally

2 charged situation because of concern that it might be poorly received by the jury. It is also clear

3 later in the discussion that defense counsel did not believe that prosecutorial misconduct was the

4 cause of the incident:

> You know, it's very interesting that [the prosecutor] sort of shifts it on me, although he did not expressly state it, but that I'm intimating [he] made or somehow or another suggested for Mrs. Taube to kiss this particular photograph.
>
> First of all, your honor, as I made it clear, I don't want to get into that aspect because it doesn't matter. He knows or didn't know, I would assume he didn't know it was going to happen. I don't want to believe in fact that he even knew or — and I don't think that's an issue.
>
> I think one thing, he and I have conducted this trial in a manner which we've stayed away from, you know, all these little petty kinds of things. He presented it as a prosecutor would present it and I presented it as a defense attorney would present it, and I've stayed away from that.
>
> I don't even want to touch that. As far as I'm concerned, that is not the issue. I'm not alleging any kind of misconduct. (RT 6504).

Defense counsel was given an opportunity to raise prosecutorial misconduct in this particular instance and chose based on his professional opinion not to do so.

To show cause sufficient to overcome a procedural bar, petitioner must show that his trial attorney's representation fell below an objective standard of reasonableness. *See Strickland*, 466 U.S. at 688. A difference of opinion as to trial tactics does not constitute denial of effective assistance, *see United States v. Mayo*, 646 F.2d 369, 375 (9th Cir. 1981), and tactical decisions are not ineffective assistance simply because in retrospect better tactics are known to have been available. *See Bashor v. Risley*, 730 F.2d 1228, 1241 (9th Cir.), *cert. denied*, 469 U.S. 838 (1984).

Tactical decisions of trial counsel deserve deference when: (1) counsel in fact bases trial conduct on strategic considerations; (2) counsel makes an informed decision based upon investigation; and (3) the decision appears reasonable under the circumstances. *See Sanders v. Ratelle*, 21 F.3d 1446, 1456 (9th Cir. 1994). Whether counsel's actions were indeed tactical is a

1  question of fact considered under 28 U.S.C. § 2254(d)(2); whether those actions were reasonable
2  is a question of law considered under 28 U.S.C. § 2254(d)(1). *Edwards v. LaMarque*, 475 F.3d
3  1121, 1126 (9th Cir. 2007) (en banc).

Ultimately, it is petitioner's responsibility to show through evidentiary proof that counsel's performance was deficient. *See Toomey v. Bunnell*, 898 F.2d 741, 743 (9th Cir. 1990), *cert. denied*, 498 U.S. 960 (1990). Our court of appeals addressed this requirement, stating:

> When the contemporaneous objection rule is involved, the focus is upon the reason why the attorney did not object. Ordinarily, an attorney will fail to make an objection for one of two reasons: either he or she makes a strategic decision not to object, or he or she fails to object because of inadvertence of ignorance of the law. To discourage lawyers from "sandbagging," the Court in Sykes stated that a defendant would ordinarily be bound by the trial decisions of his attorney. (Citation omitted.) Thus, we find that the threshold of the cause prong cannot be met when the attorney makes a tactical decision not to object unless the defendant can show that the decisions constitutes a Sixth Amendment violation.

*Garrison*, 653 F.2d at 378.

Petitioner's trial attorney's decision not to object based on prosecutorial misconduct to the mother kissing a photograph of the decedent is not a situation where he failed to object due to inadvertence or ignorance of the law. *See Garrison*, 653 F.2d at 378. The attorney was well aware, as is evidenced by the discussion during the motion for mistrial, of the prosecutor's expectation that he might object on misconduct grounds and he opted not to do so based on his professional judgment. Petitioner has failed to show through evidentiary proof that counsel's performance was deficient. *See Toomey*, 898 F.2d at 743. Therefore, petitioner has failed to make the requisite showing of cause to excuse the default for this subclaim.

### *(ii)* *"Internal Fortitude" Comment*.

As noted, *supra*, petitioner's assertion that counsel did object to this comment is incorrect. If petitioner intends for the general assertion of ineffective assistance of trial counsel to constitute cause for the default of this particular subclaim, he has failed to make the requisite showing.

When objecting to the prosecution's second round of comments regarding the requirement for a unanimous verdict to impose the death penalty, the defense attorney stated

11

that he "never like[s] to interrupt another person's argument" (RT 6881). This statement evinces a clear strategy to his objections during the prosecutor's closing statement to a minimum. Petitioner has not shown that his trial attorney's failure to object to the "internal fortitude" statement constituted ineffective assistance.

### *(iii)* *Failure to Seek an Admonition for Kormos and Noyer Statements*.

For both the statements regarding whether Dr. Kormos had a loved one who violated the law and the imaginary conversation with victim Leslie Noyer, defense counsel objected immediately and the trial court directed the prosecutor to pursue another line of argument (RT 6943, 7001). The prosecutor ended his closing argument shortly thereafter and defense counsel did not pursue another request for mistrial or make any other statement outside the presence of the jury that indicated his concern about the impact of the prosecutor's improper remarks (RT 7002–03). This subsequent silence on the matter combined with the fact that the defense attorney had made known his preference not to object if not necessary, yet he had previously requested a mistrial twice lends to the inference that the failure to seek an admonition was a trial tactic. Petitioner has offered no evidence or argument that the failure to seek an admonition for these two particular statements constituted deficient performance. Accordingly, petitioner has failed to make the requisite showing of cause to excuse the default for this subclaim.

### *(iv)* *Prejudice.*

Because the petitioner failed to make the requisite showing of cause for any of the four subclaims, the issue of prejudice need not be reached. *See Sexton v. Cozner*, 679 F.3d 1150, 1157–58 (9th Cir. 2012) ("Only if we determine that [petitioner] has demonstrated cause, would we proceed to determine if [petitioner] has demonstrated prejudice to meet the 'cause and prejudice' standard").

### **C.** **Fundamental Miscarriage of Justice.**

Petitioner states that "it can be demonstrated that failure to consider part of claim 5 could result in a 'fundamental miscarriage of justice' (citation omitted), an unjust incarceration" (Opp. at 4–5). Petitioner makes no other argument or showing in favor of a finding of

12

1 fundamental miscarriage of justice. As such, he has failed to meet the very demanding standard
2 of fundamental miscarriage of justice, which requires more than a showing of an "unjust
3 incarceration."

4       If a state prisoner cannot meet the cause and prejudice standard, a federal court may
5 still hear the merits of the successive, abusive, procedurally defaulted or untimely claims if the
6 failure to hear the claims would constitute a "miscarriage of justice." *See McQuiggin v. Perkins*,
7 __ U.S. __, 133 S. Ct. 1924, 1931-32 (2013) (holding that miscarriage of justice (actual
8 innocence) showing applies to claims filed after the AEDPA statute of limitations has run, as
9 well as to successive, abusive and procedurally defaulted claims). By the traditional
10 understanding of habeas corpus, a "miscarriage of justice" occurs whenever a conviction or
11 sentence is secured in violation of a constitutional right. *See Smith v. Murray*, 477 U.S. 527,
12 543-44 (1986). However, the Supreme Court limits the "miscarriage of justice" exception to
13 habeas petitioners who can show that "a constitutional violation has probably resulted in the
14 conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327 (1995) (citing
15 *Murray*, 477 U.S. at 496). "Actual innocence" means factual innocence, not merely legal
16 insufficiency. *See Bousley v. United States*, 523 U.S. 614, 623-24 (1998) (citing *Sawyer*,
17 505 U.S. at 339).

18       Under this exception, a petitioner may establish a procedural "gateway" permitting
19 review of defaulted claims if he demonstrates "actual innocence." *Schlup*, 513 U.S. at 316 &
20 n.32. The required evidence must create a colorable claim of actual innocence, that the
21 petitioner is innocent of the charge for which he is incarcerated, as opposed to legal innocence as
22 a result of legal error. *Id*. at 321. The same holds true for a showing of being innocent of a
23 capital sentence. To show a fundamental miscarriage of justice for a capital sentencing claim, a
24 petitioner must show "a fair probability that a rational trier of fact would have entertained a
25 reasonable doubt as to the existence of those facts which are prerequisites under state or federal
26 law for the imposition of the death penalty." *Sawyer*, 505 U.S. at 346.

27       "To be credible, such a claim requires petitioner to support his allegations of
28 constitutional error with new reliable evidence — whether it be exculpatory scientific evidence,

13

trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial." *Schlup*, 513 U.S. at 324. Petitioner may pass through the *Schlup* gateway by promulgating evidence "that significantly undermines or impeaches the credibility of witnesses presented at trial, if all the evidence, including new evidence, makes it 'more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *Ibid*. (*quoting Schlup*, 513 U.S. at 327).

Petitioner has presented absolutely no evidence in support of his argument that failure to consider the four subclaims in claim 5 would constitute a fundamental miscarriage of justice. He offers no evidence to support an argument that he is actually innocent of the prerequisites for the imposition of the death penalty in California.

Based on the record before it, the Court cannot conclude that had these statements and incidents not happened that "a rational trier of fact would have entertained a reasonable doubt as to the existence of those facts which are prerequisites under state or federal law for the imposition of the death penalty.'" *Sawyer*, 505 U.S. at 346. Accordingly, the petitioner has failed to show that adhering to the procedural default for these four subclaims would constitute a fundamental miscarriage of justice.

### 2. CLAIM 23.

In this claim, petitioner asserts that the trial court violated *Crawford v. Washington*, 541 U.S. 36 (2004), when it admitted co-defendant Clark's statement to the police after it had been redacted to remove references to another person because Clark was then compelled to testify in his own defense. Clark's testimony, in which he admitted killing Leslie Noyer, implicated petitioner because shells from a gun like petitioner's were found at the scene and petitioner's palm print was found on her car door (Amd. Pet. 240–42). Petitioner also alleges that without this evidence admitted in violation of *Crawford*, the jury would not have had enough evidence to convict petitioner of the murder of a second victim, Lori Anne Rochon, or impose the death penalty (*id*. at 242–45).

### A. Procedural Default.

The California Supreme Court denied this claim because petitioner's trial attorney had consented to admission of the redacted statement and withdrew his objection under *People v. Aranda*, 63 Cal. 2d 518 (1965). *Stevens*, 41 Cal. 4th at 198–99. Respondent asserts that the claim is procedurally defaulted based on the adequate and independent contemporaneous objection rule (Mot. to Dismiss at 8). Petitioner states, "Respondent argues that Claim 23 is defaulted. That is wrong. The result was a fundamental miscarriage of justice" (Opp. at 12, citation omitted). He does not, however, elaborate on why the claim is not defaulted.

Petitioner later admits that his trial attorney did consent to the statement's admission (Opp. at 13) and, as with the subclaims of claim 5, does not challenge the adequacy or independence of the contemporaneous objection bar. Petitioner has failed to shift the burden under *Bennett* back to the respondent and, as such, the claim is procedurally defaulted.

### B. Cause and Prejudice.

Similar to his assertion regarding the subclaims of claim 5, petitioner states that his trial attorney "was prejudicially ineffective under the Sixth Amendment by agreeing to the admission of the statementes (sic)" (Opp. at 12) and "counsel's negligence and errors cannot excuse a constitutional violation of this magnitude" (*id*. at 13). And, as with the subclaims of claim 5, petitioner fails to set forth any argument as to how counsel's agreement to the admission of the statements constituted deficient performance.

Respondent argues that petitioner has failed to exhaust his claim that his trial attorney was ineffective in consenting to the now-challenged statement, and that exhaustion is a prerequisite to asserting it as a basis for cause (Reply at 5). Petitioner contends that because the claim is easily resolved against him it can be decided on the merits (Opp. at 13).

Contrary to petitioner's earlier argument that returning to state court to exhaust a related claim of ineffective assistance of counsel in order to use it to assert cause and prejudice would be a waste of resources (Opp. at 4), such exhaustion is mandatory under *Martinez*, __ U.S. __, 132 S. Ct. 1309. As noted in *Trevino v. Thaler*, __ U.S. __, 133 S. Ct. 1911, 1918 (2013):

> "Cause" is established under *Martinez* where: (1) the claim of "ineffective assistance of trial counsel" was a "substantial" claim;

15

> (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial" review proceeding in respect to the "ineffective-assistance-of-trial-counsel claim"; and (4) state law requires that an "ineffective assistance of trial counsel [claim] . . . be raised in an initial-review collateral review proceeding."

Petitioner never brought this claim of ineffective assistance of counsel in state court at any time. Accordingly, he cannot now assert it as cause for the *Crawford* claim.

Moreover, even if he had exhausted this claim, he still would be unable to show cause. By ensuring the redacted statement conformed with *Bruton v. United States*, 391 U.S. 123 (1968), petitioner's trial attorney vitiated any *Crawford* concern. *See, e.g., United States v. Rakow*, 286 F. App'x 452, 454 (9th Cir. 2008) (denying claim alleging *Crawford* violation where prior testimony of co-defendant was admitted against co-defendant because "absent *Bruton* error, *Crawford* has no work to do in this context . . . .") (citing *United States v. Johnson*, 297 F.3d 854, 856 n.4 (9th Cir. 2002); *United States v. Chen*, 393 F.3d 139, 150 (2d Cir. 2004) (the same factual circumstances surrounding admission of co-defendant's statement "that prevent *Bruton* error also serves to prevent *Crawford* error").

Additionally, co-defendant Clark appeared at trial and testified following the presentation of the redacted statement, which provided petitioner the opportunity to cross-examine Clark about his statements to the police. Therefore, there is no violation of petitioner's rights under the Confrontation Clause. *Crawford*, 541 U.S. at 59 n.9 ("[W]hen the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements").

Petitioner has failed to show cause and prejudice or a fundamental miscarriage of justice to excuse the procedural default of this claim.

### 3. CLAIM 6.

Petitioner's claim 6 alleges that the prosecutor "committed misconduct by intentionally presenting evidence that he knew, and had repeatedly argued to the court, was false and unreliable, specifically the numerous conflicting pretrial statements of Clark" (Amd. Pet. 107). Respondent asserts that the claim is procedurally defaulted because the California Supreme

16

1    Court denied this claim both on the merits and because it "could have been, but [was] not raised
2    on appeal," citing *In re Harris*, 5 Cal. 4th 813, 825, n.3 (1993), and *In re Dixon*, 41 Cal. 2d 756,
3    759 (1953) (Mot. to Dismiss at 5).  Respondent relies on the reasoning in *Walker v. Martin*, 562
4    U.S. 307 (2011), to support his claim that *Dixon* is an adequate and independent procedural bar.
5    Petitioner argues that rejecting this claim on procedural default grounds is "illogical" because it
6    was briefed "over a six-year period" in the California Supreme Court, albeit on habeas (Opp. at
7    9).  Petitioner also notes that our court of appeals has not decided the adequacy of the bar and
8    that district courts within the circuit remain split on whether the bar should be honored (*ibid*.).

9         *Dixon* provides that to bring a claim in a state habeas corpus action, a petitioner must
10    first, if possible, have pursued the claims on direct appeal from his or her conviction unless the
11    claim falls within certain exceptions.  *See Park*, 202 F.3d at 1151.  The California Supreme
12    Court intended to reestablish *Dixon* as an adequate procedural bar in 1993, after its decision in
13    *In re Harris*, 5 Cal. 4th 813 (1993).  However, following *Harris*, many courts within the Ninth
14    Circuit continued to hold California's *Dixon* bar inadequate, based on its inconsistent
15    application.  *See*, *e.g.*, *Dennis v. Brown*, 361 F. Supp. 2d 1124, 1130-34 (9th Cir. 2005); *Fields*,
16    125 F. 3d at 763–64 (9th Cir. 1997).

17         In *Walker*, the Supreme Court held that California's untimeliness bar was adequate and
18    independent and noted that even if outcomes under a particular bar vary from case to case, a
19    procedural bar may nonetheless be adequate, and allowing such discretion permitted the state
20    courts "to avoid the harsh results that sometimes attend consistent application of an unyielding
21    rule." __ U.S. __, 131 S. Ct. At 1129–30.  Using this reasoning, district courts within the Ninth
22    Circuit have held that the *Dixon* bar is adequate and independent.  *See*, *e.g.*, *Richardson v. Biter*,
23    No. CV 12-10042-BRO(AS), 2014 WL 296635, at *7–8 (C.D. Cal. Jan. 28, 2014); *Ortiz v.*
24    *Harrington*, No. CV 11-420-JAK(ASR), 2013 WL 6387146 at *15 n.10 (C.D. Cal. Dec. 6,
25    2013).  Respondent relies on these court's interpretations of *Walker* to support his claim of
26    adequacy.

27         However, our court of appeals recently held that *Walker* dealt specifically with the
28    untimeliness bar and was not applicable to the *Dixon* bar because the *Dixon* bar was not

17

discretionary in nature. *Lee v. Jacquez*, No. 12-56258, 2015 WL 3559125, *3–5 (9th Cir. June 9, 2015). In light of *Lee*, respondent's adequacy argument no longer holds. Accordingly, respondent has not met his burden of pleading an adequate and independent state bar pursuant to *Bennett* and this claim is, therefore, not procedurally defaulted.

## CONCLUSION

The four subclaims of claim 5 and claim 23 are procedurally defaulted. Petitioner failed to make the requisite showing of cause and prejudice or a fundamental miscarriage of justice. Accordingly, those subclaims and claims are **DISMISSED**. Claim 6 is not defaulted and petitioner shall brief it in the next round of merits briefing.

**IT IS SO ORDERED.**

Dated: June 26, 2015.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE